# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | CASE NO. 4:11CR10(1) |
| v. § | |
| § | |
| FERNANDO DUARTE MEDRANO § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENT

This matter having been referred by the Honorable Richard A. Schell, the Court has considered Defendant's Amended Motion to Suppress (Warrant and Statements) (Dkt. 150). After considering the evidence presented and the arguments of counsel at the hearing held on January 5, 2012, the Court finds that the motion should be DENIED.

Defendant Fernando Duarte Medrano is charged in this matter with conspiracy to possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 846 and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). In his motion, Defendant seeks to suppress all evidence and statements resulting from the search of his residence on December 7, 2010. Defendant argues that there was not sufficient probable cause to support the search warrant which uncovered, among other things, over $1 million in currency, 353 pounds of marijuana, and 13 firearms.

1

The affidavit in support of the search warrant indicates that, after receiving a drug trafficking tip regarding a residence in Dallas, federal agents conducted surveillance on the residence and conducted two "trash runs" of large plastic trash cans outside of the residence. During the search of the first trash bags recovered, the agents discovered, among other things, torn pieces of paper with various denominations written in ink, miscellaneous aluminum and plastic wrappings, numerous rubber bands, electrical tape, an unknown grease substance, and various documents bearing the names of Marbeth Medrano and Fernando Medrano and the address of the reported drug trafficking, 10901 Mandalay Drive. During the second search of the trash retrieved on a different day, agents again found torn pieces of paper with hand-written denominations (totaling thousands of dollars), a bag containing numerous rubber bands, plastic wrapping and aluminum foil, and a green leafy substance which tested positive as marijuana. According to the search warrant affiant, based on his experience in law enforcement, such materials were consistent with the packaging and trafficking of drugs. *See* Dkt. 150-1.

Defendant alleges that the information provided in the affidavit regarding the anonymous tip and the contents of the trash bag was insufficient to form probable cause. Defendant specifically alleges that the only contraband found was the marijuana found during the second trash run and that a single trash run is an insufficient basis to form probable cause of drug dealing. Defendant additionally seeks to suppress the statements he provided to law enforcement after he was arrested during the execution of the search warrant.

## EVIDENCE PRESENTED

At the hearing, the Government offered the testimony of Joe Mata, an agent with the D.E.A., and the affiant for the search warrant at issue. Mata testified that he has been involved in more than 500 drug investigations during his career and that he has been the affiant for more than 100 search warrant affidavits. Mata testified about the investigation leading up to the identification of Defendant's residence as a place of narcotics distribution and described the "trash runs" conducted on the residence.

Mata explained what contraband he discovered during the two separate trash runs, how he linked the trash to Defendant's residence, and the basis for preparing the search warrant affidavit. Mata testified that he discovered plastic casings, vacuum seal bags, multicolored rubber bands, green saran wrap with a greasy substance, and other materials commonly used to package kilo quantities of cocaine. According to Mata, the greasy substance is commonly used to mask the odor of cocaine and the rubber bands are commonly used to bundle money. Mata also testified about the small pieces of paper with denominations written on them, including a note reading "Meno Segoville $37,000." According to Mata, he linked the trash bags to Defendant's residence because he found receipts with name Fernando Medrano and Marbeth Medrano and a piece of mail with Defendant's residence's address on it. Mata further testified that during the second trash run, he observed many of the same materials as before. He testified that agents also found tin foil with marijuana residue and a green leafy substance which field tested positive for marijuana. At the hearing, the Government offered into evidence photographs of some of the items recovered from the trash runs.

Mata testified that, because various items in the trash indicated drug trafficking activity, he believed that there was sufficient probable cause to seek the search warrant. Mata stated that no statements in the affidavit were made in an attempt to mislead the state magistrate who issued the warrant. Mata further testified that he believed in good faith that the search warrant was valid when issued.

Upon execution of the warrant, Defendant was arrested and questioned. Mata stated that he read Defendant his *Miranda* rights in Spanish. Mata testified that he read from a pre-printed card and asked Defendant whether he understood his rights. All conversations with Defendant were in Spanish, and Defendant did not ask for a lawyer during their 20 minute post-*Miranda* conversation at the residence.

Defendant offered no witnesses or evidence at the hearing.

## ANALYSIS

The Court first addresses Defendant's argument that the search warrant was invalid. Probable cause is necessary to support the issuance of a valid search warrant. *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007). "Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." *United States v. Daniel,* 982 F.2d 146, 151 (5th Cir. 1993). Rather, probable cause is determined through an examination of a totality of the circumstances. *U.S. v. Fields*, 456 F. 3d 519, 523 (5th Cir. 2006). Thus, in determining the validity of a search warrant, a court must "make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit ..., there is a fair probability that contraband or

evidence of a crime will be found at a particular place." *United States v. Froman,* 355 F.3d 882, 889 (5th Cir. 2004) (citations omitted).

The Court finds that, based on a review of the record and testimony offered as well as the applicable governing authorities, the affidavit to search Defendant's home was valid. First, the Court finds that the affidavit contains sufficient information to connect Defendant Medrano to the house and the house to the trash bags, including papers with the Medrano name on them and discarded mail with the home's address on it. *U.S. v. Sibley*, 448 F.3d 754, 758 (5th Cir. 2006) (finding that there was sufficient information in an affidavit such that it was not unreasonable to believe there was probable cause to search an apartment where information in the affidavit linked the defendant to the apartment and to possession of marijuana and the apartment and its occupants to prior drug activity). This was sufficient for probable cause that the trash seized was Defendant's.

Next, the Court turns to Defendant's argument that the marijuana discovered during a single trash run was not enough to form probable cause. There is no magic number of "trash runs" to be conducted prior to the issuance of a search warrant. *See U.S. v. Hopkins*, 2000 WL 20986, 3 (N.D. Tex. 2000). Noting that there is no *per se* requirement that there be multiple searches of trash to establish probable cause, Judge Fitzwater of the Northern District of Texas noted:

> In some cases the paucity of evidence found in one trash seizure may in fact require more than that single garbage pickup before a warrant may be issued. In the present case, however, the contents of the trash were themselves a treasure trove and, coupled with the other grounds set out in the affidavit, amply established probable cause.

5

*Id.* (finding there was a sufficient basis for the state judge to find probable cause to issue the search and arrest warrant based on totality of circumstances, even though only a single trash run was conducted).

Mata testified, and his affidavit set forth that both trash runs uncovered various forms of materials that, based on his years of experience, he knows are used in the distribution of drugs. The search warrant here was not based solely on the marijuana found but a tip of drug trafficking and other materials known to be used in the packaging and distribution of drugs found in the trash. The Court finds that, based on the totality of the circumstances, the affidavit set forth sufficient probable cause to search Defendant's residence. *See, e.g., U.S. v. Sauls*, 192 Fed. Appx. 298, 299-300 (5th Cir. 2006) (finding that affidavit reflecting investigation into utilities and cars at residence, criminal history of defendant and a search of garbage placed on the street containing mail and plastic baggies with drug residue, "*in its totality,* supported a good faith conclusion by an objectively reasonable officer that the affidavit on which the warrant was based was adequate to establish probable cause").

Finally, even if probable cause had been insufficient here – which the Court finds that it was not – having heard the testimony offered, the Court finds that sufficient evidence was presented to show that Mata acted in good faith reliance on the search warrant when executing it. Under the good faith exception to the exclusionary rule, evidence is admissible if it is obtained by law enforcement officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate. *United States v. Leon*, 468 U.S. 897, 927-28 (1984). Nothing was presented to the Court to indicate that any of the information contained in the affidavit was deliberately false or misleading.

Indeed, Mata's testimony about the trash runs were consistent with the allegations in the affidavit, and Mata stated under oath that he executed the warrant with a good faith belief that it was valid. Defendant has not made any showing of bad faith by any law enforcement officer connected to this case. Therefore, the search will not be suppressed on that basis.

Finding that the affidavit was based on probable cause and executed in good faith, the Court next turns to Defendant's request to suppress his statements made to law enforcement after his arrest. While his written motion states that he seeks a suppression based on a theory of the fruit of the poisonous tree, arguments during the hearing also implied that Defendant seeks to suppress those statements because they were not made in accordance with his *Miranda* rights.

To the extent Defendant's motion seeks an independent suppression of Defendant's statements after he was arrested, the Court finds that there is no basis to suppress such statements. In order for the Government to introduce Defendant's statements, it generally must prove that the accused voluntarily, knowingly and intelligently waived his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966). To prove a valid waiver, the Government must show that the relinquishment of the defendant's rights was voluntary and that the defendant was fully aware that the right was being waived and the consequences of waiving that right. *Id.*

At the hearing, Mata testified that Defendant was administered his *Miranda* warnings in Spanish and was told of his right to an attorney. Defendant did not offer any evidence or testimony to the contrary. Having heard the testimony presented, the Court finds that Defendant made a knowing and voluntary waiver of his *Miranda* rights and was not coerced or threatened by law

enforcement officers to do so. Therefore, his statements should not be suppressed.

## RECOMMENDATION

The Court recommends that Defendant's Amended Motion to Suppress (Warrant and Statements) (Dkt. 150) be DENIED.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within the time period set forth above shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 6th day of January, 2012.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE